## UNITED STATES v. THRELKELD. *
### No. 1000.

Circuit Court of Appeals, Tenth Circuit.
July 28, 1934.

Harry W. Blair, Asst. Atty. Gen. (William J. Barker, U. S. Atty., of Santa Fe, N. M., and A. Gilberto Espinosa, Asst. U. S. Atty., and E. S. French, Regional Law Officer, Department of Agriculture, both of Albuquerque, N. M., on the brief), for the United States.

George Threlkeld, of Roswell, N. M., pro se.

Before PHILLIPS, McDERMOTT, and BRATTON, Circuit Judges.

BRATTON, Circuit Judge.

This is a condemnation proceeding to acquire certain privately owned land, a part of a homestead granted under the provisions of 16 USCA § 506, within the exterior boundaries of the Lincoln National Forest in New Mexico, deemed by the Secretary of Agriculture to be necessary for highway, logging railroad, skidway, and landing ground purposes in connection with the administration, protection, and development of the forest; the particular need being thus stated in the petition:

"Of removing, or having removed thereover the dead, matured and large growth of trees upon plaintiff's said forest known as the Lincoln National Forest, and transporting timber so removed from said forest to practical points for the manufacture and marketing thereof, and

"For the purpose of ingress and egress to said forest for the transportation of men, supplies and equipment for the maintenance and preservation of said forest, and the prevention and extinguishment of fires therein, and

"For use as a permanent highway for the administration, protection, development and improvement of said Lincoln National Forest, and

"For the use of the people of the United States visiting said forest for health, recreation and enjoyment."

The trial court sustained a demurrer in which the sufficiency of the petition was challenged on the ground that the power of eminent domain did not exist for the stated

*Writ of certiorari denied 55 S. Ct. 215, 79 L. Ed. ——.

purposes, and dismissed the case. The appeal presents the correctness of that action.

The Secretary of Agriculture is charged with the administration of the national forests. 16 USCA cc. 2, 3 (section 471 et seq.; § 551 et seq.). It is provided by statute that, when an officer of the government is authorized to procure real estate for public use, it may be acquired by condemnation if in his opinion it is necessary or advantageous to the government to make the acquisition in that manner. 40 USCA § 257.

That power is subject to the requirement that just compensation be made, an obligation imposed by the Fifth Amendment to the Constitution. Phelps v. United States, 274 U. S. 341, 47 S. Ct. 611, 71 L. Ed. 1083. The petition follows the statute almost verbatim with respect to the necessity and advantage of making the acquisition in question, and it is alleged that the Secretary of Agriculture requested the institution of the suit.

■ The court may determine in a proceeding of this kind the nature of the proposed use, that is, whether it is public or private, United States v. Gettysburg Electric Ry. Co., 160 U. S. 668, 16 S. Ct. 427, 40 L. Ed. 576; Hairston v. Danville & Western Ry. Co., 208 U. S. 598, 28 S. Ct. 331, 52 L. Ed. 637, 13 Ann. Cas. 1008; Rindge v. Los Angeles, 262 U. S. 700, 43 S. Ct. 689, 67 L. Ed. 1186; Cincinnati v. Vester, 281 U. S. 439, 50 S. Ct. 360, 74 L. Ed. 950; but, in the absence of bad faith, and if the use is a public one, the necessity for the desired property as a part thereof or the expediency of appropriating it thereto is not a question for judicial determination. It is one for the legislative branch of the government, and its determination may be delegated. Chappell v. United States, 160 U. S. 499, 16 S. Ct. 397, 40 L. Ed. 510; Backus v. Depot Co., 169 U. S. 557, 18 S. Ct. 445, 42 L. Ed. 853; Kaw Valley Drainage Dist. v. Metropolitan Water Co. (C. C. A.) 186 F. 315, certiorari denied 220 U. S. 615, 31 S. Ct. 719, 55 L. Ed. 610; United States v. O'Neill (D. C.) 198 F. 677.

■ It is contended, however, that the law authorizing condemnation of private property for public use does not apply to a case of this kind. The national forests throughout the country are incalculably rich in minerals, timber, scenery, recreational facilities, and in other respects. It is obvious from a survey of the several administrative statutes to which reference has been made that Congress contemplated and desired adequate protection, development, and utilization of those resources in the interest of the public. It is necessary to harvest timber and to transport it to convenient places for manufacture or market; transportation of minerals from mine to smelter or market must be provided; protection against devastating fires and other destruction is a necessity. Egress and ingress are essential. These and other necessities in the course of administration require transportation facilities for persons as well as property. Reasonable administration and development make them an imperative necessity. Realizing that necessity, Congress made a substantial appropriation for the construction and maintenance of roads, trails, bridges, fire lanes, telephone lines, cabins, fences, and other improvements necessary for the proper and economical administration, protection, and development of the forests during the fiscal year ended June 30, 1934. Act March 3, 1933, 47 Stat. 1432, 1449. Similar appropriations have been made annually for many years.[1] The language used is broad, and vests wide discretion in the Secretary of Agriculture to determine the kind, character, and location of the roads; also the nature, extent, and location of the other improvements requisite to the desired husbandry of the forests. It should be noted that the act does not provide that such roads or other improvements must be exclusively within the forests. Congress must have borne in mind that, due to geographic, topographic, and other conditions too numerous to detail,

---

[1] Act of July 7, 1932, 47 Stat. 627; Act of February 23, 1931, 46 Stat. 1259; Act of May 27, 1930, 46 Stat. 410; Act of February 16, 1929, 45 Stat. 1205; Act of May 16, 1928, 45 Stat. 555; Act of January 18, 1927, 44 Stat. 991; Act of May 11, 1926, 44 Stat. 514; Act of February 10, 1925, 43 Stat. 836; Act of June 5, 1924, 43 Stat. 446; Act of February 26, 1923, 42 Stat. 1304; Act of May 11, 1922, 42 Stat. 520; Act of May 31, 1920, 41 Stat. 710; Act of July 24, 1919, 41 Stat. 252; Act of October 1, 1918, 40 Stat. 989; Act of March 4, 1917, 39 Stat. 1150; Act of August 11, 1916, 39 Stat. 461; Act of March 4, 1915, 38 Stat. 1100; Act of June 30, 1914, 38 Stat. 430; Act of March 4, 1913, 37 Stat. 843; Act of August 10, 1912, 37 Stat. 288; Act of March 4, 1911, 36 Stat. 1253; Act of May 26, 1910, 36 Stat. 431; Act of March 4, 1909, 35 Stat. 1048; Act of May 23, 1908, 35 Stat. 260.

it might be expedient and advantageous to construct approach or entrance roads at strategic points or crossing privately owned land in order to provide a feasible and necessary system of egress, ingress, and transportation of persons and material. It must be presumed that Congress likewise realized that for similar reasons it might be necessary to provide tramways, logging railroads, skidways, and landing grounds on privately owned land situated within or adjacent to forests for the transportation, handling, and marketing of timber and minerals. Location, geography, topography, and industrial conditions could render it impossible to achieve these results otherwise. It is difficult to believe that Congress intended to vest the administration of such vast and valuable estates in the Secretary of Agriculture to be preserved and utilized in the public interest without empowering him to acquire privately owned land for those essential purposes. We think the broad authority to construct and maintain roads and other improvements includes the power to acquire land for that purpose if it is necessary because, when legislative authority to do a specified thing is conferred, power to do all things reasonably necessary to its achievement is impliedly granted. Is it conceivable that a necessity exists to harvest a storehouse of timber on the forest; that it is necessary to transport that timber across the privately owned land in question in order to remove, market, or process it advantageously; that the protection and development of the forest in the public interest cannot be accomplished without doing so and yet the Secretary lacks power to buy the land for that purpose? We think not. No such restriction has been thought to exist under previous appropriations. If he has the power to purchase the land for that public use and deems its use advisable or advantageous, it may be acquired through condemnation. In' Hanson Co. v. United States, 261 U. S. 581, 43 S. Ct. 442, 444, 67 L. Ed. 809, the court said: "The authority to condemn conferred by the last-mentioned act extends to every case in which an officer of the government is authorized to procure real estate for public uses."

▆▆ In making the appropriation for the several purposes, it was not necessary to grant express power to condemn land for use in connection therewith because that authority had been conferred by existing law thereby rendering its inclusion in the subsequent act mere repetition or tautology. 40 USCA § 257. United States v. Beaty (D.

C.) 198 F. 284, reversed on other grounds (C. C. A.) 203 F. 620; United States v. Graham & Irvine (D. C.) 250 F. 499; Hanson Co. v. United States (C. C. A.) 277 F. 894 (affirmed 261 U. S. 581, 43 S. Ct. 442, 67 L. Ed. 809, supra). Appellee contends that the power of eminent domain should be confined to the express terms or clear implication of the grant, and the cases of United States v. Rauers (D. C.) 70 F. .748, and United States v. A Certain Tract of Land in Cumberland Tp. (C. C.) 70 F. 940, are relied upon to sustain its application. We recognize that doctrine and are in accord with it, but for the reasons stated we think the power is clearly conferred here.

It follows that the court erred in sustaining the demurrer to the petition. The judgment is reversed and the cause remanded for further proceedings not inconsistent with the views expressed herein.

Reversed and remanded.