**E. F. FOX, Individually and as Executor of the Estate of Alice C. Fox, Deceased, Appellant,**

v.

**UNITED STATES of America, Appellee.**

**No. 18886.**

United States Court of Appeals Eighth Circuit.

June 28, 1968.

Garry A. Pearson (of Arnason & Pearson), Grand Forks, N. D., for appellant and filed brief and reply brief.

J. Edward Shillingburg, Atty., Dept. of Justice, Washington, D. C., for appellee; Mitchell Rogovin, Asst. Atty. Gen., and Meyer Rothwacks and Deene R. Goodlaw, Attys., Dept. of Justice, Washington, D. C., and John O. Garaas, U. S. Atty. for the District of North Dakota, were on the brief.

Before VAN OOSTERHOUT, Chief Judge, MATTHES, Circuit Judge, and HARRIS, Chief District Judge.

HARRIS, Chief District Judge.

This is an appeal from a judgment dismissing the complaint of E. F. Fox and Alice C. Fox for refund of income taxes for the year of 1959 in the sum of $665.09, and interest thereon in the sum of $106.04, as determined by the District Director of Internal Revenue for the District of North Dakota at Fargo. The taxes for which refund is sought represent the amount due from interest paid to plaintiffs by the Bank of North Dakota from certificates of deposit issued to taxpayers by the bank. Chief Judge Register's opinion is reported in 266 F. Supp. 312 (1967).

E. F. and Alice C. Fox filed a timely joint federal income tax return for the calendar (and taxable) year of 1959 with the District Director of Internal Revenue, Billings, Montana, which listed a sum of $821.12 representing interest from certificates of deposit received from the Bank of North Dakota. However, such sum was not included in the taxpayers' computation of gross income on the basis that under the provisions of Section 103(a) (1) of the Internal Revenue Code of 1954, it was not includable. After an audit by the Internal Revenue Service a statutory notice of deficiency was issued and pursuant thereto E. F. Fox paid the deficiency of $665.09 to the District Director of Internal Revenue at Fargo, North Dakota. Subsequently, E. F. Fox paid an additional sum of $106.04 in assessed interest on the tax deficiency to the District Director.

Alice C. Fox, the wife of E. F. Fox, died on July 10, 1962, and E. F. Fox was duly appointed and qualified as executor of the estate of Alice C. Fox, deceased, and becomes the plaintiff in this capacity.

On March 27, 1964, the plaintiff timely filed a claim for refund of the disputed sum with the District Director of Internal Revenue for the District of North Dakota, which was rejected.

Appellant contends that the involved taxes represent interest on the obligations of a state or political subdivision of a state and hence are exempt from taxation under Section 103 of the Internal Revenue Code of 1954.[1]

The defendant contends that the interest paid by the Bank of North Dakota on certificates of deposit issued by the bank to E. F. and Alice C. Fox, is includable in their gross income pursuant to § 61(a) (4) of the Internal Revenue Code of 1954.[2] Defendant insists that such interest is not excludable from gross income under the provision of Section 103 of the Internal Revenue Code of 1954 because the interest so paid was not interest on the obligations of a state or a political subdivision of a state within the meaning of Section 103, Internal Revenue Code of 1954.

---

1. § 103. Interest on certain governmental obligations

    (a) General Rule.—Gross income does not include interest on—

    (1) the obligations of a State, a Territory, or a possession of the United States, or any political subdivision of any of the foregoing, or of the District of Columbia;

    \*   \*   \*   \*   \*   \*   \*   \*

26 U.S.C.A. § 103 (Internal Revenue Code of 1954.)

2. § 61. Gross income defined

    (a) General definition.—Except as otherwise provided in this subtitle, gross income means from whatever source derived, including (but not limited to) the following items:

    \*   \*   \*   \*   \*   \*   \*   \*

    (4) Interest;

    \*   \*   \*   \*   \*   \*   \*   \*

26 U.S.C.A. § 61 (Internal Revenue Code of 1954).

Jurisdiction is established pursuant to 28 U.S.C.A. § 1346(a) (1). The facts are not in dispute. The only question for determination by the court is whether interest paid by the Bank of North Dakota (an acknowledged creation and agency of the State of North Dakota) on regular certificates of deposit issued by the bank to individual customers is to be included in computing gross income for federal income tax purposes.

In 1919 the Legislature of the State of North Dakota authorized the creation of the Bank of North Dakota.[3] It is the only state owned bank in the United States. It is sufficient to the narrow issue here involved to state that the bank acts as a general depository for the state, as all state funds must be deposited therein and that it engages in private commercial operations. It is endowed with certain powers and capable of subjecting itself to liabilities. It is not subject to the general banking laws of the state, but is empowered to sue and can be sued. It receives deposits from most any source, which are guaranteed by the state.

In the conduct of its commercial operations the bank in no way differs from the manner in which private banks in North Dakota operate. It makes the same types of investments as private banks, offers savings and checking accounts just as private banks do, and competes with private institutions in rendering services to the public. It pays the same rate of interest on certificates of deposit issued to private persons as that paid by private banks. Deposits received from private persons are not treated as public funds. They do not go into the general funds of the state. The certificates of deposit are segregated from the public funds on the books of the bank.

The question here involved turns on the construction of the statute and its application as to whether the interest from an ordinary certificate of deposit issued to a private individual by the Bank of North Dakota should be treated as an "obligation" within the meaning of that term as used in Section 103(a). If the certificate of deposit issued to the taxpayers by the bank represents an "obligation" of the State of North Dakota, or a political subdivision thereof, created in the exercise of the institution's borrowing power, the interest accrued and paid thereon would not be includable in determining gross income for federal income tax purposes.

In affirming the district court we hold that the interest paid by the Bank of North Dakota to the taxpayers on the certificates of deposit should not be excluded in computing gross income for federal income tax purposes under Section 103(a) (1), 26 U.S.C.A. The district court correctly held that the interest is taxable pursuant to the provisions of Section 61(a) (4), 26 U.S.C.A.

This issue could very well be determined on a question of public policy of discrimination. Cf. Helvering v. Stockholms Enskilda Bank, 293 U.S. 84, 55 S. Ct. 50, 79 L.Ed. 211. However, we look to the statute as provided by Congress and its construction as a basis of our decision.

Section 61(a) of the Internal Revenue Code of 1954 requires that income "from whatever source derived" be included in gross income. Section 103(a) provides an exclusion for interest paid on the "obligation" of a state or political subdivision thereof. The Congress provided for the exclusion in the original Revenue Act of 1916 and it has remained virtually unchanged through numerous successive reenactments.[4]

---

3. For a detailed discussion concerning the creation of the Bank of North Dakota, its purposes, attributes, functions, and description of its operations, see State of North Dakota v. Olson, 33 F.2d 848 (8 Cir., 1929).

4. Section 4 of the Revenue Act of 1916 (c. 463, 39 Stat. 756); Section 213(b) (4) of the Revenue Acts of 1918 (c. 18, 40 Stat. 1057), 1921 (c. 136, 42 Stat. 227), 1924 (c. 234, 43 Stat. 253) and 1926 (c. 27, 44 Stat. 9); Section 22(b) (4) of the

As pointed out in the Brief of appellee the exclusion as provided under this section reflects a fundamental long-standing policy of Congress that the federal government shall not impose any restraint on the borrowing power of the states or their political subdivisions for public use and benefit. The legislative history clearly indicates that the purpose of the exclusion is to permit state and local governments to obtain capital at a low rate of interest. Intrinsic to the statutory exclusion of interest on governmental obligations is the requirement that the obligation be incurred in the exercise of the state's (or political subdivision) borrowing power.

It has been consistently held that the exemption provided by Section 103(a) is applicable to such obligations incurred in the exercise of the borrowing power of the State. However, the word "obligations" is not intended to extend to every obligation which may include interest but only to those obligations which were created in the exercise of the state's borrowing power.

In Commissioner of Internal Revenue v. Meyer, 104 F.2d 155 (2 Cir., 1939), the court said: "It is manifest that the word 'obligations' in the statute was not intended to extend to every obligation which included the payment of interest but only to those obligations which were created in the exercise of the borrowing power. See Helvering v. Stockholms Enskilda Bank, 293 U.S. 84, 55 S.Ct. 50, 79 L.Ed. 211."

The funds deposited in the Bank of North Dakota by the taxpayers in this case are not to be construed as "borrowed" by the bank. They represent only a deposit liability upon which a stated rate of interest is paid to the depositor. The same rule was stated by the court in construing the statute with reference to interest on municipal obligations as having accrued on debts incurred under the borrowing power of

the city. There the obligation entered into by the City of Detroit was incurred under the power of eminent domain. The court held that the interest was not exempt within the meaning of the Act. Holley v. United States, 124 F.2d 909 (6 Cir., 1942). The court went on to say that its ruling follows the "settled law on this point." Citing cases. The reasoning of the court in its construction in that case is persuasive here.

Also, in distinguishing between deposit liability and commercial indebtedness our own circuit (8 Cir.) held in Commissioner of Internal Revenue v. Ames Trust & Savings Bank, 185 F.2d 47, 49, that, for the purposes of computing credits under the excess profits tax statutes, the bank was not entitled to treat as borrowed capital deposits made under negotiable time certificates of deposit.

"Historically and recognizedly, bank deposits have never been regarded as representing 'borrowed capital,' within the commercial connotation of that term. As the Iowa Supreme Court said in Elliott v. Capital City State Bank, 128 Iowa 275, 276, 103 N.W. 777, 778, [1 L.R.A.,N.S., 1130,] the term 'deposit' always has had a meaning of its own, 'peculiar to the banking business, and one that the courts should recognize and deal with according to commercial usage and understanding.' And such a transaction is without any of the characteristics of money borrowing. Certainly there is no intent on the part of an ordinary depositor to make a general loan to the bank. Nor is a bank permitted to deal with deposits as general loans, for the law, through legislative or administrative regulation, imposes limitations upon the manner and extent of the use of such funds, different from those on capital investment or borrowings. Also, as we have indicated, the distinction between deposit liabilities and other indebtedness is recognized by

Revenue Acts of 1928 (c. 852, 45 Stat. 791), 1932 (c. 209, 47 Stat. 169), 1934 (c. 277, 48 Stat. 680), 1936 (c. 690, 49 Stat.

1648) and 1938 (c. 289, 52 Stat. 447); and the Internal Revenue Code of 1939.

the banks themselves in their records and operations." Commissioner of Internal Revenue v. Ames Trust & Savings Bank, supra.

Although the Bank of North Dakota is not subject to the general banking laws of the state, the statute creating the bank and the administrative regulation of the Internal Revenue Act applicable thereto bring it within the rule as enunciated by Circuit Judge Johnsen for our court of appeals.

It is also well settled that such funds in the bank are not "public funds" and may not be used for governmental operation. In discussing the authority and powers of the Bank of North Dakota as an agency of the sovereign power engaged in the banking business, the Supreme Court of North Dakota placed emphasis on the fact that the bank has a distinct status separate and apart from that of the state itself. In construing the Act establishing the bank, the court made it clear that the bank was to function as a distinct and separate agency of the sovereign power and went on to say:

"The act does not prescribe that the profits realized from such bank in operations shall be considered state funds for the purpose of distribution in governmental operation. Manifestly, the funds on deposit in such bank are not public funds of the state for disbursement in governmental operation excepting as the same have been deposited by the treasurer of the state for such purposes. * * *

"As a depositary of public funds the Bank of North Dakota merely succeeds, under the law, to the functions of the privately owned depositary banks." Sargent County v. State, 47 N.D. 561, 182 N.W. 270, 274 (1921); State ex rel. Kozitzky v. Waters, 45 N. D. 115, 176 N.W. 913. See State ex rel. Stearns v. Olson, 43 N.D. 619, 175 N.W. 714.

It is seriously contended that since the bank is operated by the State of North Dakota, the bank's obligations are that of a political subdivision which comes within the exclusion clause of the Internal Revenue Act, Section 103(a) (1). Numerous cases are cited by the appellant in support of this contention. These cases are distinguishable to the narrow issue here decided and are inapposite.

It is also argued that the certificates of deposit amounted to promissory notes and therefore should be treated as coming within the designation of the statute as such an obligation. It is a well established rule that for the purposes of protection under the law of negotiable instruments, certificates of deposit have been treated as the equivalent to promissory notes. "But this would hardly require that a deposit transaction evidenced by a certificate of deposit be regarded as a borrowed capital indebtedness evidenced by a note, for purposes of the present statute. That would only be creating another irrelevant distinction in relation to the purpose of the statute, between negotiable and non-negotiable certificates, just as the Tax Court did between time and demand certificates. For purposes of the statute, there is entitled to be borne in mind the fact, as stated in Elliott v. Capital City State Bank, supra, 128 Iowa 275, 276, 103 N. W. 777, 778, that 'It is undoubtedly true that such certificates have many of the incidents of promissory notes, and that they are often classed as such, but it is equally as true that a certificate of deposit represents a transaction entirely different from that represented by a note.'" Commissioner of Internal Revenue v. Ames Trust & Savings Bank, 185 F.2d 47, 50.

Thus the interest paid on the certificates of deposit by the Bank of North Dakota is not exempt. The assessment was proper and the judgment of the district court is affirmed.