T.C. Memo. 2010-171

UNITED STATES TAX COURT

DOMINICK DENAPLES AND MARY ANN DENAPLES, Petitioners <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

LOUIS DENAPLES AND BETTY A. DENAPLES, Petitioners <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket Nos. 14357-08, 14359-08.     Filed August 3, 2010.

       Ps' property was taken by eminent domain, and they
reached a settlement on the amount of compensation, along
with an amount designated as interest (settlement interest).
Ps received installment payments, along with interest
accruing at the rate provided for in Pa. R. Civ. P. 238
(installment payment interest).  Ps argue that the portion
of the settlement interest in excess of the legally required
interest is excludable from their gross income under sec.
103, I.R.C.  Ps also argue that all of the installment
payment interest is excludable under sec. 103, I.R.C.,
because it was not required by law and was paid under the
State's borrowing power.

       <u>Held</u>:  No part of the settlement interest is excludable
from Ps' gross income under sec. 103, I.R.C.

Held, further, the interest on installments is not excludable from Ps' gross income under sec. 103, I.R.C.


Barry H. Frank, for petitioners.

Peter James Gavagan, for respondent.


MEMORANDUM OPINION


NIMS, Judge:  Respondent determined deficiencies in the income tax of Dominick and Mary Ann DeNaples of $714,019 for 2003, $587,257 for 2004, and $1,023,299 for 2005.  Respondent also determined deficiencies in the income tax of Louis and Betty A. DeNaples of $714,019 for 2003, $570,197 for 2004, and $1,023,298 for 2005.

The issues for decision are:  (1) Whether any portion of an eminent domain settlement amount designated as interest is excludable from petitioners' gross income under section 103; and (2) whether interest accruing on the settlement amount and included in the installment payments is excludable from their gross income under section 103.  Unless otherwise indicated, all section references are to the Internal Revenue Code in effect for the years in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure.

## Background

These cases were consolidated and submitted fully stipulated pursuant to Rule 122. The stipulations of the parties, with accompanying exhibits, are incorporated herein by this reference. Petitioners resided in Pennsylvania at the time they filed their petitions.

Dominick and Louis DeNaples (petitioners) each owned a 50-percent partnership interest in D&L Realty (D&L), a 50-percent interest in a joint venture named Keystone Co. (Keystone), and 50 percent of the S corporation stock of Rail Realty, Inc. (Rail Realty). Rail Realty was the sole shareholder of F&L Realty, Inc. (F&L), a qualified subchapter S subsidiary.

In connection with the construction of the Lackawanna Valley Industrial Highway, the Pennsylvania Department of Transportation (PENNDOT) sought to acquire property (Keystone Landfill) owned by Keystone, D&L, and F&L (the condemnees). PENNDOT took the property by eminent domain by filing a series of declarations of taking from 1993 to 1998.

The condemnees filed objections to the taking and ultimately settled with PENNDOT. Under the settlement PENNDOT agreed to a $40,900,000 payment (the settlement amount) as of November 7, 2001 (the settlement date). Pursuant to the agreement of the parties, the settlement amount was allocated $24,638,555 to principal and $16,261,445 to interest (settlement interest).

Payment was to be made in five annual payments, with the first payment of $8,100,000 plus accrued interest due by March 1, 2002, and the remaining four payments of $8,200,000 plus accrued interest due by March 1, 2003, 2004, 2005, and 2006. Interest accrued annually on the unpaid settlement amount at the rate set by rule 238 of the Pennsylvania Rules of Civil Procedure (Pa. R. Civ. P. 238).

PENNDOT paid petitioners[1] each $10,111,193 in 2003, $9,289,353 in 2004, and $17,739,276 in 2005. On their 2003 through 2005 Forms 1040, U.S. Individual Income Tax Return, each petitioner reported taxable interest income of $545,664, $545,664, and $1,091,328, respectively, and excluded from gross income $2,040,054, $1,629,134, and $2,838,545, respectively, as tax-exempt interest under section 103.

On March 20, 2008, respondent issued notices of deficiency to each petitioner determining that the excluded interest was not tax exempt.

## Discussion

To be successful in this controversy, petitioners must show that the State of Pennsylvania incurred the obligation to pay interest in the exercise of its borrowing authority.

---

[1]According to the settlement, petitioners were responsible for distributing the installment payments to the condemnees.

Petitioners argue that a portion of the settlement interest and the whole of the installment payment interest are excludable from income.

I.  Settlement Interest

When property is taken under eminent domain, the owner is entitled to just compensation, which includes interest from the date of the taking to the date of payment.  United States v. Thayer-West Point Hotel Co., 329 U.S. 585, 588 (1947); Seaboard Air Line Ry. Co. v. United States, 261 U.S. 299, 306 (1923). Three types of damages may be available to the property owner whose land has been taken for public use:

> Upon appropriation, * * * [the property owner] acquires an immediate right to the fair market value of the land. * * *
>
> The property owner may also be entitled to recover damages, traditionally called detention damages, from the date of the taking of the property to the date of the award as compensation for the detention of the landowner's money. * * * Finally, the property owner may receive interest from the date of the award to the date of payment.  * * * [In re De Facto Condemnation & Taking of Lands of WBF Associates, L.P., 903 A.2d 1192, 1199 (Pa. 2006).]

Detention damages plus interest from the date of the award are collectively referred to as "delay damages".  Id.

Section 103 excludes from gross income interest earned on the obligations of any State or its political subdivision.  Sec. 103(a), (c)(1).  The exclusion is limited to interest paid by a governmental entity on obligations issued under its borrowing authority.  Stewart v. Commissioner, 714 F.2d 977, 981 (9th Cir.

1983), affg. T.C. Memo. 1982-209; <u>King v. Commissioner</u>, 77 T.C. 1113, 1118 (1981). Courts determine whether the agency's obligation to pay interest arises by operation of law or as a result of voluntary bargaining. Courts have uniformly held the section 103 exclusion inapplicable to interest paid in connection with condemnation proceedings. See <u>Stewart v. Commissioner</u>, <u>supra</u>; <u>Drew v. United States</u>, 551 F.2d 85 (5th Cir. 1977); <u>Holley v. United States</u>, 124 F.2d 909 (6th Cir. 1942); <u>Balt. & Ohio R.R. Co. v. Commissioner</u>, 78 F.2d 460 (4th Cir. 1935), affg. 29 B.T.A. 368 (1933); <u>U.S. Trust Co. of New York v. Anderson</u>, 65 F.2d 575 (2d Cir. 1933); <u>King v. Commissioner</u>, <u>supra</u>.

Petitioners contend that 26 Pa. Stat. Ann. sec. 1-611 (West 2006) required a 6-percent rate of interest on delay damages. Petitioners' argument assumes that the settlement interest should be bifurcated: One portion of the interest is that required by Pennsylvania law (legally required interest), and the other portion is the excess over that amount (excess interest), which should be tax exempt under section 103. Petitioners reason that the excess interest did not arise by operation of law but rather as the product of voluntary bargaining between petitioners and PENNDOT. Using that reasoning, petitioners contend that the excess interest was paid in connection with Pennsylvania's borrowing authority and is therefore excludable under section 103.

To be successful petitioners must show, as an initial matter, that the settlement interest was in excess of the legally required interest. They have failed to do so and are incorrect in relying on 26 Pa. Stat. Ann. sec. 1-611 for the legal rate of interest on delay damages. In Hughes v. Commonwealth Dept. of Transp., 523 A.2d 747 (Pa. 1987), the Pennsylvania Supreme Court held the 6-percent rate of 26 Pa. Stat. Ann. sec. 1-611 to be unconstitutional and required the use of the prevailing commercial loan rate instead. Because the record does not indicate (1) what the commercial loan rate was during the years in issue[2] and (2) what interest rate petitioners and PENNDOT actually used, petitioners have not established that PENNDOT paid "excess interest".

Although petitioners submitted calculations from which a purported rate of interest could be calculated, we do not find these calculations to be satisfactory. Petitioners have presented no evidence upon which to base their calculations, and the settlement allocations appear to be the product of an

---

[2]Though not established by the record, it appears that petitioners and PENNDOT used the Pa. R. Civ. P. 238 rate as a proxy for the commercial loan rate. The Pa. R. Civ. P. 238 rate is "the prime rate as listed in the first edition of the Wall Street Journal published for each calendar year for which the damages are awarded, plus one percent, not compounded." Commercial loan rates are based on the prime rate and are typically between prime plus 1 percent to prime plus 3 percent. See Hagan v. E. Pennsboro Twp., 713 A.2d 1187, 1191 (Pa. Commw. Ct. 1998).

arbitrary assignment by petitioners and PENNDOT rather than a mathematical computation of interest.

Petitioners' calculations indicate that PENNDOT paid: (1) $11,342,365 of interest for a 1,044-day delay on the payment of the $17,185,384 fair market value of Keystone's share of Keystone Landfill; (2) $1,260,263 of interest for a 1,044-day delay on the payment of the $1,909,487 fair market value of F&L's share of Keystone Landfill; (3) $3,622,240 of interest for a 2,382-day delay on the payment of the $5,488,236 fair market value of D&L's share of Keystone Landfill's mineral rights; and (4) $36,588 of interest for a 1,893-day delay on the payment of the $55,437 fair market value of F&L's share of Keystone Landfill's mineral rights.

On the basis of these numbers, the interest rates would have been approximately 23.1, 23.1, 10.1, and 12.7 percent, respectively. There is no explanation in the record for the difference in interest rates. More significantly, a close examination of petitioners' interest amounts reveals that the length of the delay in payment was not factored into the computation of the amount of "interest". For each of these four ownership interests in Keystone Landfill, the same ratio (approximately 39.759 percent) was allocated to "interest" without any regard for the number of days payment had been delayed.

Accordingly, we hold that petitioners are not entitled to exclude from their gross income the amounts designated settlement interest under section 103.

II.  Installment Payment Interest

The second prong of petitioners' argument is that the installment payment interest was not required by law because Pa. R. Civ. P. 238 does not apply to eminent domain proceedings.  On the basis of that argument, petitioners conclude that the installment payment interest was the product of voluntary bargaining and paid pursuant to Pennsylvania's borrowing power.

The premise for their conclusion, however, is incorrect. While Pa. R. Civ. P. 238 does not create a legal requirement to pay interest from the settlement date, the just compensation requirement under the United States and Pennsylvania Constitutions does.  See U.S. Const. amend. V; Pa. Const. art. I, sec. 10.  Just compensation entails payment of delay damages, which includes interest from the date of the award (i.e., the settlement date) to the date of payment.  See In re De Facto Condemnation & Taking of Lands of WBF Associates, L.P., 903 A.2d at 1199.  Thus, by operation of law, Pennsylvania was required to pay interest on the installment payments.

Accordingly, we hold that petitioners may not exclude from their gross income any portion of the installment payment interest.  They did not produce evidence of the prevailing

commercial loan rates during the years in issue and have not shown that the State of Pennsylvania incurred the obligation to pay interest in the exercise of its borrowing power.

Our consideration of whether petitioners are entitled to bifurcate the installment payment interest is obviated by our holding that no portion of that interest was shown to be in excess of the amount required by operation of law.

To reflect the foregoing,

<u>Decisions will be entered for respondent</u>.