**STATE BANK OF ALBANY, Plaintiff,**

v.

**UNITED STATES of America,
Defendant.**

**No. 65 Civ. 335.**

United States District Court
N. D. New York.

Aug. 28, 1967.

Whalen, McNamee, Creble & Nichols, Albany, N. Y., for plaintiff; Charles E. Nichols, Albany, N. Y., of counsel.

Mitchell Rogovin, Asst. Atty. Gen., David A. Wilson, Jr., Burton G. Lipsky, Dept. of Justice, Washington, D. C., Justin J. Mahoney, U. S. Atty., Northern Dist. of New York, Albany, N. Y., for defendant.

OPINION

McLEAN, District Judge.*

Plaintiff sues for a refund of federal income tax paid by it for the year 1962 in the amount of $10,606.55 on the ground that this sum was erroneously reported and paid by plaintiff and illegally collected by defendant. The case was submitted for decision upon stipulated facts. It presents a question of law which is apparently of first impression.

The $10,606.55 paid by plaintiff was the tax on the sum of $20,397.21 which plaintiff included in its taxable income as reported in its 1962 tax return. It is conceded that plaintiff filed a timely claim for refund of the tax. No refund has been forthcoming.

The $20,397.21 constituted interest received by plaintiff in 1962 on loans made by plaintiff to students pursuant to Sections 650–658 of the New York Educa-

* Of the Southern District of New York sitting by designation.

tion Law, McKinney's Consol.Laws, c. 16. The question is whether this interest constitutes "interest on * * * the obligations of a State * * * or any political subdivision" of a state within the meaning of Section 103(a) of the Internal Revenue Code of 1954 (26 U.S.C. § 103 (a)) which excludes such interest from a taxpayer's gross income. The answer to this question depends upon a determination of the legal effect, for federal income tax purposes, of the activities of the New York Higher Education Assistance Corporation (the "Corporation") created by Section 650 of the Education Law in 1957.

The purpose of the Corporation is "to improve the higher and vocational educational opportunities of persons who are residents of this state, and who are attending or plan to attend colleges or vocational institutions in this state or elsewhere, by lending funds to such persons, or guaranteeing the loan of funds to such persons, to assist them in meeting their expenses of higher or vocational education * * *" (Section 651). To that end Section 653 empowers the Corporation to lend money to such students and also "to guarantee the loan of money" to them, up to certain specified maximums and under certain conditions not material here.

Section 653–a, subd. 1 provides that "[n]o loan made or guaranteed by the corporation shall bear interest at a rate in excess of six per cent per annum * * *." It further provides that the Corporation shall not guarantee any loan which bears interest at a rate higher than the then prevailing rate of interest up to a maximum of six per cent per annum unless the Board of Directors of the Corporation determines otherwise.

Section 653–a, subd. 3 provides:

"In the case of loans guaranteed by the corporation, there shall be paid to the corporation from the state treasury annually a sum sufficient to pay the amount of all of the interest payable pursuant to subdivision one of this section, on behalf and for the account of the borrower, by the corpora-

tion during the period during which the borrower is regularly pursuing the college or vocational institution program for which such loan was made and nine months thereafter * * *."

It further provides that:

"Upon the borrower's completion of such college or vocational institution program * * * such interest accruing nine months thereafter on such loan, up to a maximum of three per centum per annum thereof shall be paid by the borrower directly, and any such interest in excess of said three per centum per annum thereof shall be paid by the corporation, on behalf and for the account of the borrower * * *. There shall be paid to the corporation from the state treasury annually a sum sufficient to pay the amount of any such interest in excess of said three per centum per annum thereof * * *."

Section 653–b deals with repayments of such loans. Subdivision 1 provides:

"The terms and conditions of any loan made or guaranteed by the corporation shall not require the borrower thereof to commence the repayment of his loan and any interest which he may be obliged to pay thereon, earlier than one year following his completion or other termination of the college or vocational institution program for which such loan was made * * *. Such a borrower shall not be required to repay in full any such loan or any interest thereon earlier than within four years following his completion or other termination of his college or vocational institution program * * *."

Pursuant to this statute plaintiff and the Corporation on June 19, 1961 entered into a "guaranty loan agreement." After reciting that the Corporation desires that plaintiff shall make loans to students, the agreement goes on to prescribe the procedure for the making of such loans. In substance it provides that any application by a student to plaintiff for a loan shall be submitted by plaintiff to the Corporation for approval and if

approved, plaintiff will thereupon loan to the student the amount approved by the Corporation and will take in evidence of the loan a promissory note signed by the student in a specified form. The form of note annexed to the agreement to be signed by the student provides that the student promises to pay to plaintiff the principal amount of the note at maturity "and to pay interest upon the unpaid principal amount of this note" from the date of the note to maturity at the rate of six per cent. It provides that the note shall mature when the student has completed his course of study or discontinued his enrollment prior to completion of his course or in any event not later than five years from the date of the earliest advance made to him.

The note further provides:

"To the extent that the interest on this note shall be paid directly to the Lending Institution by the New York Higher Education Assistance Corporation * * * on my behalf, my obligation to pay interest hereunder shall be discharged and satisfied."

The guaranty loan agreement of June 19, 1961 further provides that:

"The Corporation hereby GUARANTEES to the Lending Institution * * * the prompt and punctual payment of the principal of each such note and interest therein specified when due * * *. In addition, the Corporation shall pay to the Lending Institution on behalf of the Student, in the case of all notes guaranteed by it, all of the six percent (6%) per annum simple interest * * * payable by the Student, in the period during which he is regularly pursuing the college program for which the loan was made, * * * and upon the Student's completion of such college program or upon the earlier termination thereof prior to completion or upon the expiration of five (5) years from the granting of the loan, whichever first occurs, the Corporation shall pay to the Lending Institution the interest thereafter accruing on such loan in excess of three percent (3%) per annum sim-

ple interest (to be paid by the Student) but not in excess of six percent (6%) per annum simple interest * * *. Such interest payments shall be made if and to the extent only that funds are made available from time to time to the Corporation for such purpose by the State of New York."

Pursuant to this guaranty loan agreement, plaintiff made loans to students and obtained from them promissory notes on the prescribed form. The $20,397.21 here involved was paid to plaintiff by the Corporation in 1962 as interest on those loans pursuant to the guaranty loan agreement. None of the loans was in default. The stipulation of facts does not state where the Corporation obtained the money to pay this interest, but defendant has conceded that it was obtained from the treasury of the State of New York pursuant to Section 653–a, subd. 3 quoted above.

This all boils down to the following situation. Plaintiff lends money to a student. The student undertakes to repay the principal of the loan. The Corporation, a state agency, guarantees that the student will repay the principal at maturity. With respect to interest, the student promises to pay it, but the Corporation also promises to pay, "on behalf of the student," all of the interest while the student is in college and half of it, i. e., the portion in excess of three per cent, after the student leaves college. Plaintiff agrees with the student that to the extent that the Corporation pays the interest, the student's obligation to do so shall be satisfied. In fact, in this case the Corporation did pay the interest, using state funds for that purpose. Is the interest so paid interest on an obligation of a state or political subdivision thereof within the meaning of Section 103(a) of the Internal Revenue Code?

Defendant concedes that the Corporation is a "political subdivision" of the State of New York. Cf. Commissioner of Internal Revenue v. Shamberg's Estate, 144 F.2d 998 (2d Cir. 1944), cert. denied, 323 U.S. 792, 65 S.Ct. 433, 89 L.

Ed. 631 (1944); Commissioner of Internal Revenue v. White's Estate, 144 F.2d 1019 (2d Cir. 1944), cert. denied, 323 U.S. 792, 65 S.Ct. 433, 89 L.Ed. 632 (1944). Defendant also concedes that the Corporation was obligated to pay the interest. But defendant asserts that the Corporation was not obligated to pay the principal and hence the interest which it paid is not interest "on" an obligation of the state.

There is no gainsaying that the Corporation guaranteed the payment of the principal by the student and that a guaranty is a certain kind of obligation. But the question remains whether it is the kind of obligation that Section 103(a) contemplates. In 1962 none of the student loans was in default. Hence at that time the Corporation had not been called upon to make good on its guaranty. It remained secondarily, not primarily, liable to plaintiff for the principal of the loan. Can it properly be said that because of the existence of this secondary or contingent liability, the interest which the state paid "on behalf of the student" was interest on its own obligation?

No decision has been found which furnishes a sure answer to this question. Norfolk National Bank v. Commissioner, 66 F.2d 48 (4th Cir. 1933), upon which plaintiff places its main reliance, seems to me inapposite. There, because of the peculiarities of financing highway construction in the state of Virginia, the City of Norfolk paid the interest on money loaned by plaintiff to the state through the intervention of a private corporation which, the court held, was in essence merely a conduit. The interest was payable by a political subdivision of a state on a principal obligation owed by the state itself. The question raised here was not involved.

■ Plaintiff's other cases illustrate generalizations which by themselves do not materially advance the solution of the problem. Thus, it is clear that the "obligation" need not take the form of a bond. An interest-bearing note issued by a political subdivision of a state in payment of the purchase price of land is within the statute, so that the interest thereon is tax exempt to the seller. Commissioner of Internal Revenue v. Meyer, 104 F.2d 155 (2d Cir. 1939). The same has been held to be true with regard to interest-bearing warrants issued by a political subdivision pursuant to a purchase contract. Kings County Development Co. v. Commissioner, 93 F.2d 33 (9th Cir. 1937), cert. denied, 304 U.S. 559, 58 S.Ct. 941, 82 L.Ed. 1527 (1937). In each case the obligation to pay both interest and principal was clearly the primary unqualified obligation of the political subdivision.

■ It is well settled that the word "obligation" in the context of Section 103(a) and its predecessors in earlier revenue acts means an obligation incurred by the state in the exercise of its borrowing power. To assist the state in borrowing money, the loan is made attractive to the lender by exempting the interest from federal tax. See Helvering v. Stockholms Enskilda Bank, 293 U.S. 84, 55 S.Ct. 50, 79 L.Ed. 211 (1934); United States Trust Company v. Anderson, 65 F.2d 575, 89 A.L.R. 994 (2d Cir. 1933), cert. denied, 290 U.S. 683, 54 S.Ct. 120, 78 L.Ed. 589 (1933).

Plaintiff seeks to take comfort from this principle. It argues that if the Corporation had borrowed money from plaintiff, and had agreed to pay interest thereon, and had subsequently used the proceeds of the loan to lend money to students, the Corporation's obligation to plaintiff would have been an obligation incurred in the exercise of the state's borrowing power, and hence the interest payable to plaintiff would have been tax exempt. That may well be true, but that is not what was done here.

It may be granted that, in all likelihood, but for the Corporation's guaranty, plaintiff would have been unwilling to lend money to impecunious students. Therefore, in a certain sense, the state has made use of its credit to induce plaintiff to make the loan. Nevertheless, I believe that there is a significant difference between this situation and a direct loan from plaintiff to the Corpora-

**748**

tion, a difference which is more than one of form. The loan was made to the student, not to the Corporation. The student got the money, used it, and agreed to repay it. The student also agreed to pay the interest, but by a separate promise the Corporation undertook to pay it for him, as a form of subsidy to the student. This does not change the fact that the loan is the student's obligation, and the interest that the Corporation paid on his behalf is interest on that obligation. The Corporation's only obligation, as far as the principal is concerned, is the guaranty. The guaranty has not yet come into play. Presumably, in many instances it never will. The interest is not interest on the guaranty, it is interest on the loan.

The general principle is that exemptions from taxation must be strictly construed against the taxpayer. Helvering v. Stockholms Enskilda Bank, 293 U.S. 84, 55 S.Ct. 50, 79 L.Ed. 211 (1934); United States Trust Company v. Anderson, 65 F.2d 575, 89 A.L.R. 994 (2d Cir. 1933), cert. denied, 290 U.S. 683, 54 S.Ct. 120, 78 L.Ed. 589 (1933).

No case has gone as far as plaintiff asks the court to go. I am not persuaded that the additional step should be taken. Plaintiff's construction of the statute seems to me to be strained. I doubt that Congress intended to include transactions of this type in the exemption. I conclude, therefore, that the interest paid by the Corporation to plaintiff in 1962 was not interest on an obligation of a political subdivision of a state within the meaning of Section 103 (a) and hence was not exempt from taxation.

One additional point may be briefly noted. Section 656, subd. 2 of the Education Law provides that:

"The state of New York covenants with the holders of the obligations and notes issued by the corporation * * * that the obligations and notes of the corporation and income therefrom shall at all times be exempt from taxation, except for estate and gift taxes and taxes on transfers."

Plaintiff says that the word "obligation" must include the obligation to pay interest on behalf of the student. Although this is by no means clear, in any event, even assuming it to be the case, the state of New York cannot by such a "covenant" prevent the federal government from taxing this interest. There is no reason to believe that the New York legislature ever so intended. Section 656, subd. 2, whatever it may include, can relate only to New York taxes.

Pursuant to Rule 52(a) this opinion constitutes the court's findings of fact and conclusions of law.

The Clerk is directed to enter judgment in favor of defendant dismissing the action.

So ordered.